1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAVIER GONZALES-GUERRERO,<br><br>                    Plaintiff,<br>        v.<br><br>THE CITY OF SAN JOSE, et al.,<br><br>                    Defendants. | Case No.: CV12-03541 PSG<br><br>**ORDER GRANTING-IN-PART**<br>**DEFENDANTS' MOTION FOR**<br>**SUMMARY JUDGEMENT**<br><br>**(Re: Docket No. 25)** |

Plaintiff Javier Gonzalez-Guerrero ("Guerrero") sues the City of San Jose ("San Jose"), Officer Brian Johst ("Johst"), Officer Mark Stephens ("M. Stephens"), Officer Gary Petrakovitz ("Petrakovitz"), and Tim Stephens ("T. Stephens") (collectively, "Defendants") for violation of his civil rights under 42 U.S.C. § 1983, battery, assault, and violation of his rights under California Civil Code § 52.1. Before the court is Defendants' motion for summary judgment. Guerrero opposes. Earlier today, the parties appeared for oral argument. For the reasons set forth herein, the court GRANTS-IN-PART Defendants' motion for summary judgment.

## I.    BACKGROUND[1]

On the night of October 22, 2011, Guerrero dressed up in green scrubs as a nurse to go to a Halloween costume party.[2] He rented a room at the Extended Stay Deluxe Hotel with some friends

---

[1] The court reviews the record in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Case No.: 12-3541 PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

to return to after the party was over.[3]  While at the party, Guerrero obtained a toy plastic revolver from another partygoer, Jacqueline Bartlett ("Bartlett"), which he secured in his waistband.[4] Bartlett had painted the gun gold and thrown on some glitter to make it appear "more real" and to "add authenticity to [her] costume."[5]  Guerrero consumed alcohol at the party, totaling between 8 to 10 vodka cranberries.[6]  As a result, Guerrero became intoxicated and eventually decided to leave around 4:00 a.m.[7]  After receiving a ride back to his hotel, Guerrero was unable to locate either his friends or his room, and instead fell asleep on the landing of a stairwell.[8]

At 7:00 a.m., the hotel receptionist, Athena Oborn ("Oborn"), arrived at work and was informed by a co-worker that a hotel guest had seen someone passed out in the stairwell.[9]  At roughly 7:30 a.m., Michael Barron ("Barron"), another hotel guest, also discovered Guerrero "out cold" in the stairwell.[10]  Despite Guerrero's odd costume and the gun sticking out of his waistband, however, Barron was unperturbed because he could tell that the gun was toy.[11]  Barron assumed – correctly, as it turns out – that Guerrero had attended a party the night before and simply needed to sleep his alcohol consumption off.[12]  He left without disturbing Guerrero.

---

[2] *See* Docket No. 33, Ex. A at 52:19-53:2.

[3] *See id.*

[4] *See id.*, Ex. H at 77:21-25; Ex. J at 10:15.

[5] *Id.*, Ex. J at 17:13-18:17.

[6] *See id.*, Ex. H at 68:12-72:11.

[7] *See id.*

[8] *See id.*, Ex. A at 86:3-4.

[9] *See id.*, Ex. H at 8:7-23; 9:24-10:8.

[10] *Id.*, Ex. B at 11:21-13:1; 15:13-24.

[11] *See id.*, Ex. B at 13:20-22; 17:2-9; 19:8-17; Ex. B at 25:10-27:13.

[12] *See id.*, Ex. B at 11:25-12:7.

2

Case No.: 12-3541 PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Around 7:45 a.m., Oborn finally sent a housekeeper to check up on the man sleeping in the stairwell.  When the housekeeper was unable to rouse Guerrero by tapping on his leg, Oborn decided to approach Guerrero herself.[13]  When Oborn reached the landing, she found Guerrero, wearing green medical scrubs and with a hat covering his face, passed out with his arms across his chest.[14]  Oborn also noticed the gun in his waistband but thought it might be real.[15]  Oborn quickly ran downstairs and called the San Jose Police Department ("SJPD"), informing them that an unknown man was asleep in the stairwell with what appeared to be a gun.[16]

Officers Tim Stephens ("T. Stephens"), Mark Stephens ("M. Stephens"), and Jeffrey Bannister ("Bannister") were the first to arrive at the scene.  They found Guerrero still lying on the stairwell landing, unconscious, with his arms across his chest.[17]  The officers also confirmed the gun in Guerrero's waistband, but could not determine whether it was real or fake.[18]  The officers came to believe that Guerrero was dangerous, fearing that at any moment he could "wake up or regain consciousness, grab the weapon and do something with it."[19]  Bannister told the others he moved to go to the fourth floor to contain Guerrero, but before he could reach his position, T. Stephens began yelling at Guerrero "Wake up," "San Jose Police," and "Get your hands up in the air."[20]  T. Stephens also may have given the conflicting command "Don't move."[21]

---

[13] *See id.*, Ex. H at 11:3-11:13; Ex. H at 11:25-12:10.

[14] *See id.*, Ex. H at 13:23-14:24; 23:9-11.

[15] *See id.*, Ex. B at 15:25-16:24; 38:8-25; 49:13-50:1.

[16] *See id.*, Ex. H at 19:12-20:7.

[17] *See* Docket No. 35, Ex. D at 84:15-85:3.

[18] *See id.*, Ex. C at 118:20-119:13; Ex. C at 105:3-7.

[19] *Id.*, Ex. C at 109:14-110:7.

[20] *Id.*, Ex. D at 137:18-21.

[21] *Id.*, Ex. E at 109:15-22; Ex. G at 42:10-17; 54:1-19.

3

Case No.: 12-3541 PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The parties dispute what happened next. Guerrero states that after waking up that he tried to comply with the officer's orders by raising his hands.[22] By contrast, T. Stephens, M. Stephens, and Bannister all say they saw Guerrero reaching for his gun.[23] And although the other officers do not make such a claim, Johst states that he saw Guerrero pointing the gun at the officers.[24] Whatever Guerrero's response was after the officers roused him, T. Stephens and M. Stephens fired upon Guerrero in a first volley of bullets.[25]

After the first volley, officers continued to yell commands at him, but Guerrero, now in significant pain, reacted to being shot by reaching down towards his wounded leg.[26] Several officers at the scene, including just-arrived Petrakovitz, state they saw Guerrero reaching for his gun a second time.[27] Johst also says he saw Guerrero pointing the gun at the officers a second time.[28] In response, four officers—T. Stephens, M. Stephens, Johst, and Petrakovitz— again fired upon Guerrero. Over the two volleys, Guerrero sustained twenty-five bullet holes to his arms, legs, abdomen, arms, hands, and feet.[29] He was rushed to the hospital for medical treatment and survived the incident.

---

[22] *See* Docket No. 33, Ex. A at 88:20-89:9; 103:23-104:1.

[23] Docket No. 35, Ex. D at 145:5-146:19; Ex. C at 123:12-124:19; Ex. F at 6:1-4.

[24] *Id.*, Ex. G at 45:16-22; 49:16-22.

[25] *Id.*, Ex. E at 87:22-89:9.

[26] *Id.*, Ex. H at 98:5-98:14; Ex. H at 97:3-18.

[27] *Id.*, Ex. C at 139:11-25; Ex. D at 156:4-17; Ex. F at 142:6-24.

[28] *Id.*, Ex. G at 56:21-57:25.

[29] *See* Docket No. 33, Ex. A at 88:29-89:9; 103:23-104:1.

Case No.: 12-3541 PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## II.    LEGAL STANDARDS

Summary judgment is appropriate only if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[30]  The moving party bears the initial burden of production by identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a triable issue of material fact.[31]  If, as here, the moving party is the defendant, he may do so in two ways: by proffering "affirmative evidence negating an element of the non-moving party's claim," or by showing the non-moving party has insufficient evidence to establish an "essential element of the non-moving party's claim."[32]  If met by the moving party, the burden of production then shifts to the non-moving party, who must then provide specific facts showing a genuine issue of material fact for trial.[33]  The ultimate burden of persuasion, however, remains on the moving party.[34]  In reviewing the record, the court must construe the evidence and the inferences to be drawn from the underlying evidence in the light most favorable to the non-moving party.[35]

## III.    DISCUSSION

### A.    Excessive Force Claim

Defendants contend that Guerrero cannot prove that the police officers acted with excessive force.  As 42 U.S.C. § 1983 is "not itself a source of substantive rights," but merely acts as a

---

[30] Fed. R. Civ. P. 56(a).

[31] *See* Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[32] *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986).

[33] *See id.* at 330; *T.W. Elec. Service, Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 630, 630 (9th Cir. 1987).

[34] *Id.*

[35] *See Anderson*, 477 U.S. at 248; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

Case No.: 12-3541 PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

conduit for vindicating other federal rights, the analysis of Defendants' use of force in the course of executing an arrest begins with the Fourth Amendment.[36]  The Fourth Amendment guarantees the right "to be secure in their persons ... against unreasonable ... seizures."[37]  "Reasonableness" is determined by "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."[38]  Factors weighing into the latter consideration include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[39]  The ultimate question, however, is whether the officers acted in an objectively reasonable manner, adjudged from the perspective of a "reasonable officer on the scene."[40]

   1.   *Nature and Quality of the Intrusion*

   It is undisputed that in seeking to detain Guerrero, Defendants surrounded him while he was unconscious and shouted commands, including a command to put his hands up.  After Guerrero woke, two of the officers shot him.  After a brief pause, several officers shot him again.  Defendants do not dispute that they attempted twice to use deadly force – or force with a "substantial likelihood of causing death or serious bodily injury"[41] – against Guerrero.[42]  While police officers are not expected to "avail themselves of the least intrusive means of responding to

---

[36] *See Graham v. Connor*, 490 U.S. 386, 393-94 (U.S. 1989).

[37] *Id.* at 396.

[38] *Id.*

[39] *Id.  See also Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003).

[40] *Id.* at 396-97.

[41] *Scott v. Harris*, 550 U.S. 372, 382 (2007); *Smith v. City of Hemet*, 394 F.3d 689, 705 (9th Cir. 2005).

[42] *See* Docket No. 25 at 17-18.

6

Case No.: 12-3541 PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

an exigent situation,"[43] they do need to establish a reasonable justification for employing irreversible, deadly force against the citizenry.[44]  "The intrusiveness of a seizure by means of deadly force is unmatched."[45]  Before employing deadly force, the officers must have probable cause to believe that the suspect poses an immediate threat of serious physical harm to either the officers' safety or the safety of others.[46]

2.    *Importance of the Government Interests*

The court next considers the countervailing government interests at play.  When the officers first approached Guerrero, they observed that he was unconscious and had what they believed to be a gun in his waistband.  In reality, Guerrero had committed no crime.  The only crime that the police officers could have reasonably inferred from observing the situation would be unlawful possession of a firearm, or drunken behavior in a public area.  As Guerrero was asleep, he did not pose an immediate risk to the officers or others.  Defendants do contend that they feared that at any moment he could "wake up or regain consciousness, grab the weapon and do something with it."[47] But Defendants can point to no case authorizing the use of deadly force against a man who is simply sleeping with a gun at his waistband, without proof of any criminal activity or other danger. Mere possession of a firearm, without more, cannot justify shooting to kill.

Upon rousing Guerrero, Defendants contend that Guerrero reached for or even brandished the toy gun at the officers in order to evade arrest.  Defendants argue that their use of deadly force was then justified by Guerrero's refusal to put his hands over his head, his reaching for the gun,

---

[43] *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994).

[44] *Cf. Tennessee v. Garner*, 471 U.S. 1, 9 (1985).

[45] *Id.*

[46] *See Monroe v. City of Phoenix,* 248 F.3d 851, 861 (9th Cir. 2001); *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010) ("Case law has clearly established that an officer may not use deadly force to apprehend a suspect where the suspect poses no immediate threat to the officer or others").

[47] *See* Docket No. 35, Ex. C at 109:14-110:7.

7

Case No.: 12-3541 PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1   and his apparent attempt to avoid arrest.  But this is stridently disputed by Guerrero, creating a

2   triable issue of fact.  Guerrero denies that he ever grasped the toy gun, and instead states that after

3   awaking to the officers' commands, he immediately raised his hands above his head in the air, and

4   then after getting shot in the right leg put his hands to his injured leg in pain.[48]  Defendants' point

5   to Guerrero's cousin Jose Luis Barragan's ("Barragon") testimony that Guerrero admitted to

6   Barragon that he put his hands down at some point in the ordeal.[49]  But Barragon is clear that he

7   does not "remember the exact conversation" that occurred between him and Guerrero after the

8   incident.[50]  Even if Barragon's testimony was unequivocal, a reasonable jury could still choose to

9   believe Guerrero's account of the facts.  Guerrero is clear that he put his hands above his head.

10   Resolving the disputed issues of fact in favor of Guerrero, at the time the officers opened fire

11   Guerrero did not resist arrest, had committed no crime, and did not reach to the gun at his side.

12   Are reasonable police officers permitted to shoot an individual under these circumstances?  Just as

13   it may answer "yes," a jury could find that the answer is no.

14            Defendants cite a number of cases, including *Cosentino v. Kurtz*, for the proposition that

15   officers can act against an individual armed with a deadly weapon before the individual actually

16   threatens or injures another.[51]  In *Cosentino,* the Central District of California granted summary

17   judgment that the police officers in that case were reasonable in shooting the plaintiff suspect, who

18   "advanced with purpose" towards the officers with an axe in his hand, despite being told repeatedly

19

20

21

22   [48] *See* Docket No. 33, Ex. A at 88:20-89:9; 103:23-104:1.

23   [49] *See* Docket No. 25, Ex. K at 14:9–14:13; 15:9–15:15.  Barragon's testimony is as follows:

24   A: I remember him saying he was going to try to put his hands or if he put them down exactly if he
     did that.  He was lying flat.  He said he had crossed his hands to try to get up.

25   Q: Did he say he tried to get up?
     A: I don't remember.

26   [50] *See id.* at 15:1-2.

27   [51] *See* Case No. CV 11-03206 GAF SSX, 2013 WL 1927119, at *7 (C.D. Cal. Apr. 16, 2013).

28

Case No.: 12-3541 PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

to drop the axe.[52]  Although the suspect never raised the axe, he consciously and purposefully walked towards the police officers in a heavily-trafficked area, thus posing an immediate threat to the officers and passerby.[53]  But *Cosentino* is factually distinguishable from the case at bar.  While it was undisputed in *Cosentino* that the suspect was conscious and carrying a deadly weapon in his hand, most of the officers agree that Guerrero did not hold or brandish the weapon.  Moreover, for purposes of summary judgment, the facts are such that Guerrero did not even reach for the gun.  Accordingly, Guerrero did not present the immediate threat that was undisputedly posed by the suspect in *Cosentino*.  With no immediate threat of serious bodily injury, "[a] desire to resolve quickly a potentially dangerous situation is not the type of governmental interest that, standing alone, justifies the use of force that may cause serious injury."[54]

## B.      Qualified Immunity

Defendants contend that even if their actions were not objectively reasonable, their actions were still protected under qualified immunity.  Qualified immunity shields officers from civil constitutional damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."[55]  The doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[56]

---

[52] *Id.* at *5.

[53] *Id.* at *8.

[54] *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001).

[55] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[56] *Id.*

9

Defendants argue that a reasonable person in their position would not know that their actions violated clearly established law.  Their contention is that it is well-established that officers may use deadly force where, as here, an individual threatens the officers' safety by refusing to comply with orders and reaching for what appears to be an authentic gun.  Defendants cite a number of cases to show that the officers acted reasonably.[57]  But Defendants miss the point, and their argument that their conduct did not violate clearly established law actually works against them.  Both parties agree about the status of the law – deadly force may only be used when the officer has probable cause to believe that the suspect poses a threat of serious injury to others.[58]  As already discussed, however, Guerrero has presented competent evidence that he did not threaten the officers or refuse to comply.  The decision to believe Guerrero or the officers is a credibility determination that this country has traditionally delegated to a jury.[59]  "[W]e rely on the consensus required by a jury decision to help ensure that the ultimate legal judgment of 'reasonableness' is itself reasonable and widely shared."[60]  Interpreting the record in the light most favorable to the non-moving party, as the court is required,[61] a reasonable jury might find that the officers' actions did violate clearly established law not to shoot to kill a compliant, non-dangerous suspect.

---

[57] *See Wilkinson*, 610 F.3d at 552; *Reese v. Anderson*, 926 F.2d 494 (5th Cir. 1991).

[58] *See Tennessee*, 471 U.S. at 9; *Wilkinson*, 610 F.3d at 550.

[59] "Of course, if an excessive force claim turns on which of two conflicting stories best captures what happened on the street, *Graham* will not permit summary judgment in favor of the defendant official.  And that is as it should be."  *Saucier v. Katz*, 533 U.S. 194, 216 (2001) (Ginsburg, J., concurring).

[60] *Abraham CAN v. Raso*, 183 F.3d 279, 290 (3rd Cir. 1999).

[61] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

10

Case No.: 12-3541 PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**C.**   ***Monell* Claim**

Defendants challenge that Guerrero cannot prove his *Monell* claim against the City of San Jose.[62]   Although a municipality is subject to liability under 42 U.S.C. § 1983, it cannot be solely held liable for the acts of its employees and agents under a respondeat superior theory.[63]   Instead, the plaintiff must show that (1) the municipality had a policy (2) that amounted to "deliberate indifference" to the plaintiff's constitutional right, and (3) that the policy is the "moving force" behind the violation of the plaintiff's constitutional right.[64]

Defendant contends that Guerrero is unable to produce evidence of any similar incidents showing a longstanding practice or custom.   At the hearing, Guerrero agreed to withdraw this claim, and so summary judgment on this issue is proper.

**D.**   **State Law Claims**

Defendants claim that they are entitled to summary judgment on Guerrero's state law claims for assault, battery, and violation of the Bane Act on the basis that the officers acted objectively reasonably.[65]   Because the same standard of reasonableness applies to both state law claims for assault and battery as Section 1983 excessive force claims, "the fact that Plaintiff's § 1983 claims under the Fourth Amendment survive summary judgment also mandates that the assault and battery claims similarly survive."[66]

---

[62] *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

[63] *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

[64] *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

[65] *See Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527 (2009) ("A state law battery claim is a counterpart to a federal claim of excessive use of force. In both, a plaintiff must prove that the peace officer's use of force was unreasonable.").

[66] *Nelson v. City of Davis*, 709 F. Supp. 2d 978, 992 (E.D. Cal. 2010) *aff'd* 685 F.3d 867 (9th Cir. 2012).

Case No.: 12-3541 PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendants also argue that California Government Code § 820.2 bars Guerrero's claims because a public employee has immunity from "an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."[67]  However, Defendants' actions here were not basic policy-level decisions but "operational" in nature.[68]  Courts have specifically held that "discretionary acts involving unreasonable use of force" are not protected under Section 820.2.[69]  Guerrero therefore may proceed to trial on his state law claims.

**E.      Punitive Damages**

Defendants also argue that punitive damages are inappropriate as a matter of law in this case.  While punitive damages in a Section 1983 case are not available against government entities or officials acting in their official capacities, they may be awarded against officials in their individual capacities.[70]  Punitive damages are appropriate where an individual's conduct is shown to be "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."[71]  In support of their claim that punitive damages are unwarranted, Defendants only state that "[t]his was a rapidly evolving situation that required the officers to make 'split second judgments,' not one that speaks of malice."[72]  At a minimum,

---

[67] Cal. Gov. Code § 820.2.

[68] *Smith v. City of Santa Clara*, Case No. 5:11-CV-03999-LHK, 2013 WL 164191, at *12 (N.D. Cal. Jan. 15, 2013).  *See also Gillan v. City of San Marino,* 147 Cal. App. 4th 1033, 1051 (2007) ("Routine discretionary decisions as part of a person's normal job duties are not covered by this immunity").

[69] *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1168 (N.D. Cal. 2009) (Section 820.2 was not applicable to Bane Act and tort claims where police officers used excessive, unreasonable force). *See also Nelson*, 709 F. Supp. 2d at 993.

[70] *See Wells v. Bd. of Trustees of California State Univ.*, 393 F. Supp. 2d 990, 999 (N.D. Cal. 2005).

[71] *Smith v. Wade*, 461 U.S. 30, 56 (1983).

[72] Docket No. 25 at 22.

12

Case No.: 12-3541 PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Guerrero has proffered evidence that Defendants acted with reckless indifference to his rights when the officers shot him in a second volley of shots, even as he lay on the floor moaning, after being seriously injured from the first volley.  Guerrero suggests that any perceived threat had clearly subsided after the first volley, making the second volley unnecessary and reckless indifference.[73] T. Stephens had stated he stopped firing in the first round because he felt the danger had ceased, so a reasonable jury might ask why he resumed firing.  T. Stephens stated he did not know why, but stopped firing when he "did not want to shoot anymore."[74]  M. Stephens stated that even though Guerrero was still lying down when the officers fired the second volley, M. Stephens fired again because "[t]he suspect did not comply with commands to get his hands up."[75]  A reasonable jury considering these comments and the duration and number of shots fired might find punitive damages to be warranted.

### IV.    CONCLUSION

Defendants' motion for summary judgment is DENIED as to Guerrero's Section 1983, assault, battery, Bane Act, and punitive damages claims, but GRANTED as to his *Monell* claim.

IT IS SO ORDERED.

Dated:  June 28, 2013

PAUL S. GREWAL
United States Magistrate Judge

---

[73] *Cf. Lamont v. New Jersey*, 637 F.3d 177, 184 (3d Cir. 2011) (although officers might have had reason to start firing upon the suspect, it soon became apparent that the suspect was unarmed and a reasonable jury could find continued firing over 10 seconds and a total of 39 rounds was unreasonable); *Ellis v. Wynalda*, 999 F.2d 243, 247 (7th Cir. 1993) ("When an officer faces a situation in which he could justifiably shoot, he does not retain the right to shoot at any time thereafter with impunity").

[74] Docket No. 33, Ex. C at 157:5-158:21.

[75] *Id.*, Ex. D at 139:1-13.

Case No.: 12-3541 PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT